UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROGER KLAES,

                                     Plaintiff,

          v.                                        DECISION AND ORDER
                                                    11-CV–606

JAMESTOWN BOARD OF
PUBLIC UTILITIES, et al.,

                              Defendants.


## INTRODUCTION

          Plaintiff Roger Klaes ("Plaintiff" or "Klaes") commenced the instant

employment discrimination and civil rights action against his former employer,

Jamestown Board of Public Utilities ("Jamestown BPU"), as well as individual

defendants David Leathers ("Leathers"), General Manager of Jamestown BPU,

David Watkins ("Watkins"), Director of Human Resources for Jamestown BPU,

Chris Rogers ("Rodgers"), Transportation and Distribution Manager for

Jamestown BPU, Arline Hazenberg ("Hazenberg"), employee in the Human

Resources Department for Jamestown BPU, William Wright, Jr., Esq. ("Wright"),

General Counsel for Jamestown BPU, Randy Peterson ("Peterson"), former

Deputy General Manager for Jamestown BPU, and Ward Near ("Near"), former

director of Human Resources for Jamestown BPU.

Plaintiff asserts claims under Americans with Disabilities Act, 42 U.S.C.
§12101, *et seq* ("ADA") and 42 U.S.C. §1983 ("Section 1983").  Plaintiff also
brings state law claims for violations of the New York State Executive Law and
Section 740 of the New York State Labor Law.  Defendants have moved to
dismiss Plaintiff's complaint in its entirety pursuant to Federal Rule of Civil
Procedure 12(b)(6).  For the reasons that follow, Defendants' motion is granted in
part and denied in part.

## ALLEGED FACTS

Plaintiff is a former employee of Jamestown BPU.[1]  Nowhere in his 356
paragraph amended complaint does Plaintiff provide his job title or his dates of
employment.  However, based upon the allegations in the amended complaint,
the Court is able to ascertain that Plaintiff is an engineer who worked either in the
electrical division at Jamestown BPU or closely with the electrical division.  The
Court is also able to ascertain that Plaintiff began working at Jamestown BPU
sometime in 2001, and that he was employed there until in or around March of
2011, when he was served with disciplinary charges and suspended from his
position in anticipation of a Section 75 disciplinary hearing pursuant to the New

---

[1]The facts set forth herein reflect the allegations in Plaintiff's amended complaint.
All well-pleaded allegations are accepted as true for purposes of this motion to dismiss,
but do not constitute the findings of the Court.  *See Chambers v. Time Warner, Inc*.,
282 F.3d 147, 152 (2d Cir. 2002).

York State Civil Service Law.

Plaintiff also alleges that he receives trash services and electrical power services from Jamestown BPU.

_Plaintiff's Disability_

Plaintiff alleges that he has a disability with the meaning of the ADA. Specifically, Plaintiff alleges that in 1999 he suffered nerve damage in his arms and "structural" damage to his limbs.  In April 2008, Plaintiff sustained serious injuries after he fell from a ladder, including a torn rotator cuff, a broken bone in his wrist, and a broken pelvis.  In addition, Plaintiff suffers from depression and sleep apnea.  He is prescribed prescription pain medication, sleeping pills, and anti-depressants.  Plaintiff alleges that Jamestown BPU was aware of his medical conditions as well as the medication he was prescribed.

Plaintiff's job schedule required on-call duty on evenings and weekends. However, Plaintiff's sleep apnea and other sleep difficulties affected his ability to be on-call in the evenings.  Plaintiff alleges that beginning in May 2008, he made numerous requests to Defendants for accommodations with respect to his on-call schedule because of his sleep issues and prescription medications for his disabilities.  Defendants denied his requests and told him that he was required to be available at all times.  According to Plaintiff's complaint, four Jamestown BPU engineers previously rotated evening on-call duties.  Plaintiff alleges that sometime in 2009, Jamestown BPU ceased its rotation policy and instead

3

required that Plaintiff and another employee were on-call "twenty-four hours a day, seven days a week, all year long."   Individual defendants Watkins, Rogers and Leathers instructed Plaintiff not to take his medication when he was on-call, and told Plaintiff that he was required to choose between his job and his medical treatments.[2]  Plaintiff further alleges that from 2004 through March 2011, Defendants forced him to take time off from work using his sick time benefits and compensatory time benefits, even though he was capable of working.

Plaintiff alleges that from 2001 through August of 2010, defendant Peterson repeatedly accused Plaintiff of having a substance or alcohol abuse problem.  Plaintiff complained to defendants Leathers and Watkins about defendant Peterson's allegations.  Peterson denied ever making the allegations against Plaintiff, and Plaintiff was reprimanded for lying.

In January of 2009, Plaintiff interviewed for the position of Deputy General Manager.  Defendants Peterson, Leathers, and Watkins participated in Plaintiff's interview.  Plaintiff was not hired for the position.

_Complaints Regarding Workplace Safety_

Plaintiff alleges that since he began working for Jamestown BPU in 2001, significant workplace safety issues have existed.  Some specific issues

---

[2]Plaintiff also alleges that Defendants were aware that he used a respirator at night, which made it difficult for him to hear text messages and phone calls. Nevertheless, Defendants continued to send him text messages at night, knowing that it was unlikely he would hear them and respond.

referenced by Plaintiff include lack of proper safety equipment, lack of necessary protective clothing for employees, and lack of appropriate safety procedures. Plaintiff states that it was his job to "know, and enforce, safety rules and regulations."  Plaintiff alleges that throughout his employment with Jamestown BPU he attempted to address problems related to workplace safety and improve safety procedure.  However, Defendants undermined his efforts and resisted his suggested improvements due to inconvenience and financial constraints.

Specifically, Plaintiff complained to defendant Rogers, the Transmission and Distribution Manager, that Jamestown BPU electrical division staff did not have arc flash suits for protection, did not adhere to confined space safety regulations, and did not use a bomb blanket.  Plaintiff informed Defendants that when Jamestown BPU employees were working in confined spaces, they were not using the appropriate tripods or harnesses.

In November 2009, Plaintiff sent an email to his direct supervisor, defendant Rogers, stating his concern that Jamestown BPU employees were not abiding by state and federal regulations for performing electric work in confined spaces.  Plaintiff cited various violations that he observed on site visits such as no use of hard-hats, improper or no use of work zone signs, and improper or no use of safety equipment around manholes.  Plaintiff and Rogers had a follow-up meeting to address Plaintiff's email.  During the meeting, Rogers was hostile to Plaintiff and stated "if we were to follow the rules we wouldn't get anything done"

5

and "they are going to be dead anyway at that point".  Plaintiff was told it was his responsibility to enforce safety rules and regulations.  However, Plaintiff claims that when he attempted to enforce the use of certain safety measures, he received little to no support from Defendants.

In January of 2009, Defendants hired an outside consultant to provide various types of safety training to the electrical division staff.  Since Jamestown BPU was required to conduct an annual safety audit of the utility, Plaintiff wanted to hire the same consultant to conduct a general safety audit and training.  With respect to the safety training, Plaintiff alleges that defendants Rodgers, Watkins, Wright and Leathers told electrical division staff to ignore parts of the safety training, including confined space procedures.

With respect to the audit, the consultant worked with Plaintiff to assess various safety-related issues at the utility.  The consultant informed Plaintiff that he was concerned about the safety performance of the electrical division staff. Plaintiff arranged a meeting between the consultant and Defendants to discuss these concerns.  During the meeting, the consultant outlined his safety concerns and submitted a proposal for an electrical safe work practices assessment by his company, which could be used to develop a safety improvement plan.  The consultant informed Jamestown BPU that he could conduct a comprehensive safety audit for $17,000.  Defendant Rogers and Watkins later told Plaintiff that the safety audit was too expensive and declined to hire the consultant.

Plaintiff also describes various "preventable" accidents which he reported to Defendants in 2009 and 2010.  One of these incidents involved an arc flash accident that resulted in serious injuries to three Jamestown BPU employees.

Plaintiff alleges that in April 2010, other Jamestown BPU employees complained to him regarding various workplace safety violations.  Plaintiff claims that these employees were reluctant to bring their concerns to the attention of Defendants for fear of retribution.  Plaintiff alleges that one crew in particular regularly violated safety rules, hid accidents, threatened staff members to prevent them from reporting incidents or complaining, and behaved in a reckless and dangerous manner.  Plaintiff complained to defendants Rogers, Leathers, Watkins and Wright regarding the crew's behavior.  Plaintiff also voiced complaints he had received from other employees.  In response, Plaintiff was reprimanded by Defendants.

Plaintiff alleges various behavior on the part of Defendants as retaliation for his safety complaints.  Specifically, Plaintiff began receiving poor performance reviews in 2008, and was subject to performance reviews more often than before. Plaintiff alleges that he was "interrogated" in the General Manager's office and the Human Resources office when he mentioned safety issues. Defendant was yelled at and told to do his "fucking job" when he brought safety issues to Defendants' attention.  Plaintiff states that he was blamed for the safety problems he complained about and given a disproportionate and overwhelming amount of

7

work.  Plaintiff also alleges that Defendants purposefully withheld information that he needed to complete his work assignments.  Plaintiff alleges that Defendants further retaliated against him by prohibiting him from having food or drink in the lunch room, disconnecting the lunch room television, and hiding the remote from him.

### Disciplinary Actions and Hearings

On January 31, 2011, Plaintiff was asked to attend a meeting with defendants Leathers and Watkins.  At that time, Plaintiff was accused of incompetency and failing to perform his supervisory duties.  Plaintiff alleges that sometime in February 2011, Watkins and Leathers spoke regarding Plaintiff's health issues and employment status.  On February 4, 2011, Plaintiff was served with a notice of disciplinary charges and hearing pursuant to Section 75 of the New York State Civil Service Law.  Plaintiff does not describe the specific charges.  However, the notice recommended disciplinary action of two days suspension without pay.  Plaintiff hired an attorney.  On February 22, 2011, Plaintiff's attorney requested an adjournment of the disciplinary hearing.

On March 11, 2011, Plaintiff was served with a modified notice with respect to his upcoming Section 75 disciplinary hearing.  The notice contained six new, additional charges and a recommendation for Plaintiff's termination.  On March 14, 2011, Plaintiff was suspended without pay pending the outcome of the disciplinary hearing.  On March 17, 2011, Plaintiff filed a discrimination charge

8

with the New York State Division of Human Rights (the "Division of Human
Rights" or "DHR"), which was cross-filed with the Equal Employment Opportunity
Commission ("EEOC").  On March 23, 2011, Plaintiff's attorney sent a letter to
Defendants stating that Plaintiff was unable to attend the disciplinary hearing due
to his disability and requesting an adjournment.

On March 25, 2011, defendant Wright sent a letter to Plaintiff's attorney
refusing the adjournment and stating that the request was a "transparent attempt
to delay [the] hearing beyond the 30-day suspension period without pay, and will
not be tolerated."  Plaintiff's attorney then sent Defendants a note from Plaintiff's
doctor, which stated that Plaintiff could not attend the hearing due to his disability.
On March 28, 2011, defendant Watkins contacted Plaintiff's doctor to inquire as
to whether Plaintiff could participate in the hearing by phone.  On April 5, 2011,
defendant Wright notified Plaintiff's attorney that Plaintiff's suspension without
pay would continue past the thirty-day statutory time limit.

On May 11, 2011, Plaintiff's attorney sent an email to Defendants.  The
email attached a doctor's note which stated that due to Plaintiff's medical
condition, he could not attend any work related hearings.  On May 18, 2011,
Plaintiff's attorney faxed Defendants a doctor's note stating that Plaintiff would not
be able to attend a hearing for a minimum of two months.  An arbitration session
scheduled for June 2, 2011 was adjourned due to Plaintiff's unavailability.  Shortly
thereafter, Defendants sent Plaintiff a letter stating that because he was

suspended without pay, he was required to begin paying a portion of his medical insurance.

Plaintiff filed a complaint with this Court on July 18, 2011.[3]  Plaintiff's amended complaint, which is the subject of the instant motion, was filed on September 6, 2011.  It appears that as of the date of the amended complaint, Plaintiff remained on unpaid suspension.[4]

## DISCUSSION

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103,

---

[3] On July 22, 2011, Plaintiff filed a motion for a preliminary injunction enjoining Defendants from continuing Plaintiff's suspension without pay until the instant federal lawsuit had been determined on its merits.  Following a response by Defendants and oral argument, this Court denied Plaintiff's motion for a preliminary injunction. (Dkt. No. 27)  The Court did not make any specific findings with respect to Plaintiff's medical condition, but noted that Plaintiff could not use long term medical and psychological conditions to postpone a termination hearing indefinitely.  The Court noted that authority existed which allowed Defendants to conduct a termination hearing in Plaintiff's absence.  *See Rao v. Gunn*, 532 N.E.2d 1275, 1276 (NY 1988).  The Court also noted that, at some point, a growing delay would become enough of a burden on Defendants to outweigh Plaintiff's right to be present at the termination hearing.

[4] On February 8, 2012, Defendants filed an affidavit informing the Court, *inter alia*, that Plaintiff's termination hearing under Section 75 of the New York State Civil Service Law was held.  (Dkt. No. 35) The hearing officer recommended that Plaintiff be terminated from his position at Jamestown BPU for incompetency and failure to perform his supervisory duties.  *Id*.  Jamestown BPU adopted the hearing officer's findings and Plaintiff was terminated from his position.

109 (2d Cir. 2005). A complaint should be dismissed only if it fails to contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. V. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2011).

Here, Plaintiff's causes of action include discrimination and retaliation in violation of Title I of the ADA, discrimination in violation of Title II of the ADA, discrimination and retaliation in violation of the New York State Executive Law, retaliation in violation of Section 740 of the New York State Labor Law, and deprivation of constitutional rights pursuant to Section 1983.

1. *Exhaustion of Administrative Remedies*

Defendants argue that the Plaintiff is precluded from bringing a claim under the ADA because Plaintiff has failed to exhaust his administrative remedies. Specifically, Defendants contend that Plaintiff has not established, nor can he establish, that he has received a right-to-sue letter from the EEOC. Plaintiff responds, erroneously, that the ADA does not require that a plaintiff fully exhaust all possible remedies with an administrative agency, but rather, if sufficient time has passed and the plaintiff is not satisfied with the agency's efforts, a plaintiff can withdraw his charge and file a federal suit.

It is clear that individuals may bring Title VII and ADA claims in federal court only after filing a timely charge of discrimination with the EEOC or the Division of Human Rights and obtaining a right-to-sue letter from the EEOC.  *See* 42 U.S.C. §2000e-5(e)(1); 42 U.S.C. §12117(a) (incorporating the exhaustion procedures set forth in Title VII into the ADA); *McPherson v. N.Y. City Dept. of Educ.*, 457 F.3d 211, 213 (2d. Cir. 2006) ("A private plaintiff under Title VII must satisfy two conditions before commencing suit in federal court.").  This exhaustion requirement is an essential part of the statutory scheme, and "is designed to give the administrative agency the opportunity to investigate, mediate, and take remedial action."  *Shah v. N.Y. State Dept. Of Civil Serv.*, 168 F.3d 610, 614 (2d. Cir. 1999).

Once a charge has been filed, the EEOC is in command of the process and has exclusive jurisdiction over the claim for 180 days.  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002).  During that time, "the employee must obtain a right-to-sue letter from the agency before prosecuting the claim [in federal court]."  *Id*.  If 180 days elapse since the filing of a charge, with no action by the EEOC, a plaintiff may then request a right-to-sue letter.  *See* 42 U.S.C. §2000e-5(f); *Briggs v. Women in Need, Inc.*, 2010 U.S. Dist. LEXIS 50873 (EDNY 2010).

While the filing of a timely charge of discrimination and receipt of a right-to-sue letter is a precondition to bringing Title VII or ADA claims in federal court, the exhaustion of administrative remedies is not a jurisdictional prerequisite to suit.

12

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).   Thus, like a statute of limitations, the exhaustion requirement "is subject to waiver, estoppel and equitable tolling." *Id.*  Since Defendants have raised this issue on a motion to dismiss, it cannot be said that they have waived this defense.  However, courts in this circuit have themselves waived the exhaustion requirement in cases where a plaintiff has "in some extraordinary way been prevented from asserting [his] rights, or when the EEOC has incorrectly refused a right to sue letter." *Ishikawa v. City of N.Y. Dept's of Cultural Affairs*, 1999 U.S. Dist. LEXIS 12687 (SDNY 1993).  *See Negron v. City of New York*, 2011 U.S. Dist. LEXIS 119463 (EDNY 2011) (authority exists for the proposition that a plaintiff's diligence in attempting to obtain a right-to-sue letter may be sufficient cause for a court to modify the statutory requirement); *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d. Cir. 2002) (equitable tolling may be appropriate "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period"); *Johnson v. MacDonald*, 2012 U.S. Dist. LEXIS 135103 (EDNY 2012) (declining to dismiss discrimination claims as time barred and instead considering them on their merits where it was clear to the court that "plaintiff actively pursued his administrative remedies, albeit ineffectively, [and it was] impossible to discount entirely the possibility that equitable tolling may be appropriate").

Moreover, the Second Circuit has held that because a Title VII or ADA plaintiff's failure to exhaust administrative remedies is an affirmative defense, a

plaintiff is not required to plead or demonstrate administrative exhaustion at the pleading stage. *Belgrave v. Pena*, 254 F.3d 384, 386 (2d. Cir. 2001); *DiPetto v. U.S. Postal Serv.*, 383 Fed. Appx. 102, 104 (2d. Cir. 2010).

Here, Plaintiff's charge was dual filed with the Division of Human Rights and the EEOC on March 17, 2011. Plaintiff filed his complaint with this Court four months later, on July 18, 2011. His amended complaint was filed on September 6, 2011. Plaintiff did not include a right-to-sue letter with either complaint, nor has he alleged that he received one. Therefore, Plaintiff has not satisfied the statutory prerequisites necessary for bringing an ADA claim before this Court.

However, 180 days have now passed since the filing of his administrative charge. Plaintiff may have received or requested a right-to-sue letter from the EEOC in the interim. For this reason, and for the reasons discussed above, Defendants' motion to dismiss Plaintiff's ADA claims for failure to exhaust administrative remedies is denied, without prejudice to Defendants' ability to assert the affirmative defense going forward in this matter if Plaintiff cannot establish that he either received a right-to-sue letter since filing the amended complaint, or that some extraordinary circumstance warrants tolling or waiver of the requirement.

> 2. *The ADA and Individual Defendants*

Plaintiff's complaint does not specifically state which Defendants he alleges to have violated the ADA. It is well settled that an individual may not be held

personally liable under the ADA.  *See Menes v. CUNY Univ. of N.Y.*, 92 F. Supp.
2d 306 (SDNY 2000) (dismissing ADA claims against individual defendants in
both their individual and official capacities); *Yaba v. Cadwalader, Wickersham &
Taft*, 931 F. Supp. 271, 274 (SDNY 1996) (the ADA, like Title VII, does not
provide for liability by individual employees).  Thus, to the extent that Plaintiff is
attempting to assert an ADA claim against any of the individual Defendants
named in the caption of the amended complaint, those claims are dismissed.
Plaintiff's ADA claims will be analyzed with respect to Jamestown BPU only.

     *3.*    *Discrimination under Title I of the ADA*

     Title I of the ADA provides that "no covered entity shall discriminate against
a qualified individual with a disability because of the disability of such individual in
regard to...hiring, advancement, discharge...and other terms, conditions and
privileges of employment."  42 U.S.C. §12112(a).  There are two types of ADA
discrimination claims.  In an "adverse action" claim, a plaintiff can allege that an
employer took an adverse action against him on the basis of his disability.  *Davitt
v. Rockland County Department of Mental Health*, 2013 U.S. Dist. LEXIS 36344
(SDNY 2013).  In a "failure to accommodate" claim, a plaintiff can allege that his
employer failed to make "reasonable accommodations to the known physical or
mental limitations of an otherwise qualified individual with a disability."  *Id.*; *accord*
42 U.S.C. 12112(b)(5)(A).  The pertinent question for this Court to consider is
whether Plaintiff's amended complaint pleads sufficient facts to state either an

adverse action claim or a failure to accommodate claim that is plausible on the face of the ADA.

Courts analyzing discrimination claims under the ADA apply the three-step burden shifting approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 US 792, 802 (1972). The burden of production rests first on the plaintiff to prove, by a preponderance of evidence, a *prima facie* case of disability discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Importantly, at the motion to dismiss stage, a plaintiff in an employment discrimination lawsuit does not have to allege specific facts establishing a *prima facie* case under *McDonnell Douglas*. *Swierkiewicz v. Sorema*, N.A. 534 U.S. 506, 508 (2002). Instead, the elements of a *prima facie* case provide an outline of what is necessary to render plaintiff's claims plausible. *Id*. Court will "consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives [d]efendant a fair notice of [p]laintiff's claim, and the grounds on which it rests." *Murphy v. Suffolk Cnty. Cmty. Coll.*, 2011 U.S. Dist. LEXIS 136983 (EDNY 2011).

In order to establish a *prima facie* case in an adverse action claim under the ADA, a plaintiff must sufficiently allege the following: (1) that his employer is subject to the ADA; (2) that he was disabled within the meaning of the ADA; (3) that he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) that he suffered an adverse

employment action due to his disability.  *Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d. Cir. 2003).  With respect to the first element, Jamestown BPU does not contest that it is covered by the ADA, and this Court finds that it is covered.  *See* 42 U.S.C. §12111(5)(A)-(B) ("The term employer means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.")

With respect to the second element, a disability under the ADA is defined "as a physical or mental impairment that substantially limits one or more of the major life functions of [an] individual."  42 U.S.C. §12102(2).  Major life activities include, but are not limited to, "seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending ,speaking, and breathing."  *Id*. Plaintiff's amended complaint alleges that his disabilities include nerve damage, "structural" damage to his limbs, sleep apnea and depression.  He alleges that these conditions caused him substantial sleep difficulties and that he was prescribed pain medication, sleeping aids, and anti-depressants.  The Court finds that, based on these allegations, Plaintiff has sufficiently pled that he suffered from a disability within the meaning of the ADA.  *See Orne v. Christie*, 2013 U.S. Dist. LEXIS 2209 (ED VA 2013) (plaintiff who alleged that he suffered from sleep apnea, which affected his sleeping and concentration, had offered enough facts to establish a disability for pleading purposes); *Shirley v. Integrated Systems*

17

*Improvement Services*, 2012 U.S. Dist. LEXIS 124193 (D AZ 2012) (motion to dismiss a plaintiff's ADA claim denied where facts alleged in amended complaint indicated that plaintiff's sleep apnea and insomnia constituted impairments that substantially limited the major life activity of sleep); *Oblas v. Am. Home Assur. Co.*, 1999 U.S. App. LEXIS 23371 (2d. Cir. 1999) (depression may qualify as a disability for purposes of the ADA provided that the condition is not a "temporary psychological impairment"); *Jiggetts v. N.Y. City Dept. Of Citywide Admin. Servs.*, 2012 U.S. Dist. LEXIS 15747 (SDNY 2012) (depression, for which an individual is receiving treatment, may qualify as a disability).

With respect to the third element, Plaintiff has established that he was otherwise qualified to perform his position.  The amended complaint alleges that Plaintiff was "qualified for his engineering job" and that he has "all of the necessary credentials to carry out the required duties of his position".  Moreover, Plaintiff alleges that he was employed by Jamestown BPU from 2001 through 2008 without incident, and that he received good performances reviews during that time period.  Plaintiff's allegations indicate that it was only in or around the spring of 2008, when Defendants became aware of his medical conditions, he requested an accommodation with respect to his on-call schedule and he began complaining more often regarding safety issues, that he began to receive negative feedback and poor performance reviews.

With respect to the final element, plaintiff must demonstrate that he

18

suffered a materially adverse employment action.[5]  An ADA plaintiff suffers an adverse employment action when he endures a "materially adverse change in terms and conditions of employment."  *Demoret v. Zegarelli*, 451 F.3d 140. 151 (2d. Cir. 2006); *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d. Cir. 2008) ("To be materially adverse, a change in working conditions must be more disruptive than a mere convenience or an alteration of job responsibilities.")  Typical examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities."  *Miller v. Praxair, Inc.*, 408 Fed. Appx. 408 (2d Cir. 2010).

Plaintiff alleges that from 2004 through his suspension in March 2011, he was forced to take time off of work, using his sick pay or compensatory benefits, even though he was capable of working.  Depending upon whether Plaintiff suffered a loss in salary or pay as a result, the forced use of sick pay or compensatory time could result in a material loss of benefits constituting an adverse employment action.

---

[5]Title VII and the ADA requires claimants to file a charge of discrimination or retaliation with the EEOC within 300 days of the discriminatory or retaliatory act.  *See* 42 USC § 2000e-5(e)(1); *Glaser v. Fulton-Montgomery Community College*, 50 Appx. 17 (2d Cir. 2002) (a Title VII claim is only actionable with respect to incidents that occur within 300 days of filing an administrative complaint); 42 U.S.C. §12117(a) (applying procedural requirements under Title VII to ADA).  Plaintiff filed his charge on March 17, 2011.  Therefore, only alleged adverse employment actions that took place on or after May 22, 2010 will be considered by the Court.

Plaintiff also alleges that he suffered an adverse employment action when he was served with the disciplinary charges which ultimately lead to his suspension without pay and termination from employment.[6]  Defendants contend that Plaintff's suspension without pay and termination cannot be considered by this Court, since they were not specifically alleged in his EEOC charge or "reasonably related" to the discrimination alleged in the charge.  However, the Court finds that the disciplinary charges themselves, which were alleged in Plaintiff's EEOC complaint, constitute an adverse employment action for purposes of Plaintiff's *prima facie* case.  Indeed, courts in this circuit have concluded that the filing of charges which results in suspensions or other types of discipline constitutes an adverse employment action sufficient to support claims of discrimination or retaliation.  *See Hughes v. Anderson*, 2012 U.S. Dist. LEXIS 104584 (EDNY 2012) (initiation of disciplinary proceedings leading to employee's termination constituted adverse employment action); *Chapman v. City of New York*, 2011 U.S. Dist. LEXIS 34221 (EDNY 2011) ("it is well settled that disciplinary charges are considered adverse employment actions satisfying the third prong of *McDonnell Douglas*"); *McPhatter v. Cribb*, 201 F.3d 431 (2d. Cir. 1999) (plaintiff could show adverse employment action where he received series

---

[6]Plaintiff's EEOC charge alleges that he was served with disciplinary charges on January 31, 2011, while Plaintiff's complaint alleges that he was initially served with disciplinary charges on February 4, 2011.  Both dates fall within the 300 day time period which may be considered by the Court.

of disciplinary notices which in some cases resulted in fines and suspension without pay).

Finally, Plaintiff has pled enough facts to allege that the adverse actions were a result of his disability.  He alleges that the disciplinary charges and the requirement that he use his sick time and compensatory time were promoted by his repeated requests for an accommodation with respect to his on-call schedule. He alleges that Defendants told him that he needed to choose between his job and his medical treatments and that Watkins, Rogers, and Leathers instructed him not to take his medication when he was on-call.  Indeed, it was Watkins and Leathers who conducted the meeting where Plaintiff was served with disciplinary charges.  Plaintiff has, therefore, satisfactorily pled a *prima facie* case of adverse action discrimination under Title I of the ADA.

For much of the same reasons, Plaintiff is also able to establish a *prima facie* case of discrimination based on Defendants' alleged failure to accommodate his disabilities.  In order to assert a failure to accommodate claim, a plaintiff must demonstrate the following: (1) he is an individual with a disability as defined by the ADA; (2) an ADA covered employer had notice of his disability; (3) he could perform the essential functions of his job with reasonable accommodation; and (4) the employer refused to make the needed accommodations.  *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d. Cir. 2001).

21

As discussed above, Plaintiff has sufficiently pled that he has a disability within the meaning of the ADA and that Jamestown BPU is a covered employer with notice of his alleged disabilities.  Plaintiff adequately alleges that he was able to perform the essential functions of his job until Jamestown BPU made changes to the on-call schedule.  Plaintiff also alleges that he repeatedly asked for an accommodation with respect to his on-call schedule, which would have allowed him to successfully perform his job and which his employer repeatedly refused to grant.  Plaintiff also contends that Defendants told him that he had to choose between his job and his medical treatments and directed him not to take his prescribed medication while on-call.[7]  These allegations are sufficient to plead a failure to accommodate claim.

For these reasons, the Court finds that Plaintiff has alleged sufficient facts to state a claim of employment discrimination under Title I of the ADA. Defendants' motion to dismiss this cause of action is denied.

4.  _Retaliation under Title I of the ADA_

Title I of the ADA not only prohibits employment discrimination on the basis

---

[7]  Defendants argue that because Plaintiff was repeatedly unable to attend his disciplinary hearing due to his medical condition, Plaintiff has not alleged that he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation.  However, Defendants first received notice that Plaintiff was unable to attend the disciplinary hearing, for medical reasons, on March 23, 2011. Plaintiff's medical condition on March 23, 2011 has no bearing upon Plaintiff's allegations that he was denied reasonable accommodation for his disability since May 2008, or that he was served with disciplinary charges and suspended from his job a month and a half prior, when he was still capable of working.

of an individual's disability, but it also prohibits retaliation against any individual who has "opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under the ADA."  42 U.S.C. §12203(a).  The Second Circuit has concluded that it is appropriate to apply the framework used in analyzing retaliation claims under Title VII when analyzing a claim of retaliation under the ADA.  *Shepard v. New York City Correctional Department and City of New York,* 360 Fed. Appx. 249 (2d Cir. 2009); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).

In order to establish a *prima facie* case of retaliation under the ADA, a plaintiff must demonstrate that: (1) the employee engaged in an activity protected by the ADA; (2) the employer was aware of his participation in the protected activity; (3) the employer subjected him to a materially adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action.  *Shepard,* 360 Fed. Appx. At 250.  At the pleading stage, plaintiff "need not establish a *prima facie* case of retaliation, but must nonetheless allege evidence stating a plausible claim of retaliation."  *Stewart v. The City of New York*, 2012 U.S. Dist. LEXIS 96998 (SDNY 2012).

With respect to the first element, "protected activity" refers to a broad range of actions taken to protest or oppose discrimination.  *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).  A protected activity does not have to "rise to

23

the level of a formal complaint" and includes complaints to management, writing critical letters and expressing support for co-workers. *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Plaintiff alleges that the following conduct constituted protected activity: his repeated request for accommodations in the form of modifications to his on-call schedule, hiring an attorney with regard to his Section 75 disciplinary hearing, and making frequent requests to adjourn his Section 75 disciplinary hearing due to his disability.

While complaints about conduct clearly prohibited by the ADA need not mention discrimination or use particular language, "ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch.*, LLC, 470 F. Supp. 2d 345, 357 (SDNY 2007). Plaintiff's retention of counsel at the time he was served with disciplinary charges and his requests to adjourn his disciplinary hearing cannot serve as protected activity to support his *prima facie* case. It is clear, based upon the allegations in the amended complaint, that Plaintiff retained counsel to defend him in the Section 75 disciplinary hearing. Plaintiff never claims that, during the time period alleged in the amended complaint, his counsel notified Defendants that Plaintiff was being discriminated against on the basis of his disability, or that Plaintiff intended to assert a claim of disability discrimination. Furthermore, requests to adjourn a disciplinary hearing cannot be said to put an employer on notice that Plaintiff was

complaining about disability discrimination.

However, Plaintiff's repeated requests, since May of 2008, for a reasonable accommodation on account of his disability do constitute protected activity.  *See Weixel v. Board of Educ. of N.Y.,* 287 F.3d 138, 149 (2d. Cir. 2002) (a request for a reasonable accommodation constitutes protected activity for a retaliation claim); *Muller v. Costello*, 187 F.3d 298, 311 (2d. Cir. 1999) (finding that a retaliation claim can be based on, *inter alia*, a request for reasonable accommodation); *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 105 (Dist. Conn. 2006) ("it is well established that seeking a reasonable accommodation for a disability constitutes protected activity, even if plaintiff actually did not have a disability within the meaning of the ADA, so long as her belief that she was disabled when she requested the accommodation was reasonable and the request was made in good faith").

With respect to the second element, general knowledge of protected activity is sufficient to make out a *prima facie* case.  *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336 (SDNY 2006); *Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the Defendant engaged in protected activity."); *Suarez v. City of New York*, 2012 U.S. Dist. LEXIS 144918 (SDNY 2012) (a plaintiff need not show that individual decision-makers within the organization knew about the protected

activity in order to establish a *prima facie* case).  Here, Plaintiff alleges that he repeatedly made accommodation requests to his supervisors.  These allegations are enough to satisfy the general knowledge requirement of a *prima facie* case.

In the retaliation context, an "adverse action" is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).  The Equal Employment Opportunity Commission has consistently found retaliatory work assignments to be a "classic" and "widely recognized" example of forbidden retaliation.  *See* 2 EEOC 1991 Manual §614.7, pp 614-31 to 614-32.  The Court finds that Plaintiff's allegations that he was required to work a disproportionate amount of on-call time, that he was forced to use his compensatory and sick time benefits even though he was capable of working, and that he was served with disciplinary charges that resulted in a suspension without pay and ultimately his termination, constitute adverse employment actions for purposes of a *prima facie* retaliation claim.  *See Webster v. Pomperaug Regional School District*, 2001 U.S. Dist. LEXIS 24165 (D. Conn. 2007) (receipt of written reprimand resulting in two days suspension constituted an adverse employment action for purposes of a retaliation claim); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454 (SDNY 2011) (filing of disciplinary charges that resulted an employee's immediate suspension and eventual termination was *prima facie* evidence of an adverse employment action).

26

As to the final element, proof of causation can be established either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence...or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." *Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111, 117 (2d. Cir. 2000).  Here, Plaintiff does not provide the dates on which he requested an accommodation for his disability but does allege that he made the requests on "numerous occasions" since May of 2008.  Additionally, Plaintiff has set forth evidence of retaliatory animus.  Plaintiff alleges that he was told by his supervisors not to take his prescribed medication while working on-call and that he had to choose between his job and his medical treatments.  Indeed, these same supervisors declined to promote plaintiff to the position of Deputy General Manager and served him with disciplinary charges.  Considering these allegations in their totality, the Court finds that, for purposes of overcoming a motion to dismiss, Plaintiff has set forth *prima facie* evidence of causation.  *See Teachout v. The New York City Department of Education*, 2006 U.S. Dist. LEXIS 7405 (SDNY 2006) (allegations that employer stated, to employee requesting a disability accommodation, "don't think you are going to get away with what you got away with before" and "only children are allowed to have disabilities, not teachers", served as *prima facie* evidence of retaliatory animus).

For all of these reasons, the Court finds that Plaintiff has pled an ADA

retaliation claim against Jamestown BPU in a manner sufficient to survive a motion to dismiss.  Defendants' motion to dismiss this cause of action is denied.

> 5.      *Discrimination under Title II of the ADA*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participating in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  *See* 42 U.S.C. §12132; *Tennessee v. Lane*, 541 U.S. 509, 516017 (2004) (the ADA "forbids discrimination against persons with disabilities in three major areas of public life; employment, which is covered by Title I of the statute; public services, programs and activities, which are the subject of Title II; and public accommodations, which are covered by Title III"). To prove a violation of Title II of the ADA, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participating in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to disability.  *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d. Cir. 2003).

Plaintiff's amended complaint sets forth a claim pursuant to Title II of the ADA.  He alleges that: (1) Jamestown BPU is defined as a public entity; (2) that he is a qualified individual who meets the eligibility requirements for receipt of services by Jamestown BPU; and (3) that he was the subject of discrimination based upon his disability.  Plaintiff does not allege that he was discriminated

28

against with respect to receipt of services, programs, or activities by Jamestown BPU.  Instead, his Title II claims are premised upon the same allegations of employment discrimination he raises under Title I.  Defendants argue that Plaintiff is prohibited from bringing an employment discrimination claim under Title II of the ADA.

The Second Circuit recently considered, for the very first time, whether Title II of the ADA applies to claims of employment discrimination.  *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 2013 U.S. App. LEXIS 2013, Docket No. 11-2215 (2d. Cir. 2013).  In *Mary Jo C.*, the Second Circuit affirmed a decision by the Eastern District of New York dismissing a public employee's discrimination claims under Title II of the ADA.  *Id.*  Therein, the Eastern District of New York had followed "the well-reasoned decisions of the most recent district court cases in this circuit [and concluded] that Title I of the ADA is the exclusive remedy for plaintiff's claims of discrimination...all of which relate to the terms, conditions and privileges of employment."  *Mary Jo. C. v. N.Y. State & Local Ret. Sys.*, 2011 U.S. Dist. LEXIS 59567, at *39 (EDNY 2011); *see also Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169 (9th Cir. 1999) (public employees' exclusive remedy against their employers under the ADA is Title I); *Fleming v. State Univ. of N.Y.*, 502 F. Supp. 2d 324, 332 (EDNY 2007) (Title II does not apply to employee claims against a public employer).

In affirming the district court's determination in *Mary Jo. C.*, the Second

Circuit reasoned that since Title I of the ADA expressly deals with the subject of employment discrimination, and Title II expressly deals with the provision of services, programs and activities, "Congress did not intend to extend Title II claims to employment discrimination claims, at least not those that are covered by Title I." 2013 U.S. Dist. LEXIS 2013, * 70. The Second Circuit went on to identify the various divisions between Title I and Title II such as differing definitions of a "qualified individual", different prohibitions on discrimination, different enforcement mechanisms by different federal agencies, and differences with respect to damages. Citing the Seventh Circuit, the Second Circuit explained that "it would make no sense for Congress to provide...different sets of remedies, having different exhaustion requirements, for the same wrong committed by the same employer." *Id.*; *quoting McGuinness* v. *U.S. Postal Serv.*, 744 F.2d 1318, 1321 (7th Cir. 1984).

The Second Circuit further reasoned that courts are required to disfavor interpretations of statutes that render language superfluous and, if a public employee were permitted to bring suit against an employer for wrongful discrimination under both Title I and Title II, Title I would become superfluous. 2013 U.S. Dist. LEXIS 2013, * 71. For these reasons, the Second Circuit ultimately concluded that the ADA "unambiguously limits employment discrimination claims to Title I [and a] public employee may not bring a Title II

claim against his or her employer." *Id.*[8]

Based upon the Second Circuit's recent decision in *Mary Jo. C.*, the Court

finds that Plaintiff is prohibited from asserting a claim against Jamestown BPU

under Title II of the ADA, in so far as his allegations are related to the terms,

conditions and privileges of his employment and are covered by Title I.

Defendants' motion to dismiss Plaintiff's cause of action pursuant to Title II of the

ADA is granted.

> 6.   *Section 1983 Claims*

Plaintiff asserts Section 1983 claims as to individual defendants Leathers,

Watkins, Rodgers, Hazenberg, Wright, Peterson, and Near.  Paragraphs 3

through 9 of the amended complaint state that Plaintiff is suing these Defendants

in their individual and official capacities.

In order to set forth an actionable claim under Section 1983, a plaintiff must

assert that a defendant "deprived [him] of a right, privilege, or immunity secured

by the Constitution or the laws of the United States."  *Gomez v. Toledo*, 446 US

635, 640 (1980).  Here, Plaintiff alleges that the individual Defendants deprived

him of his right to be "free of discrimination and/or retaliation under the First and

Fourteenth Amendments".  Defendant also alleges that various individual

---

[8] Since the employer in *Mary Jo. C.* had fifteen or more employees and therefore
was covered by Title I, the Second Circuit did not reach the issue of whether a Title II
claim may be brought against a public employer employing fewer than fifteen
employees.  Here, it is not in dispute that Jamestown BPU also employs more than
fifteen employees and is a covered entity as defined by Title I of the ADA.

Defendants deprived of his due process rights.  As explained in detail below,

Plaintiff has failed to adequately allege the violation of any constitutional right,

and therefore his Section 1983 claims fail as a matter of law.

   Based upon the allegations in the amended complaint, it appears that

Plaintiff is attempting to argue that his rights under the Equal Protection Clause of

the Fourteenth Amendment were violated when he was denied a reasonable

accommodation and retaliated against on the basis of his disability.  The

Fourteenth Amendment guarantees "a right to be free from invidious

discrimination in statutory classifications and other government activity."  *Harris v.*

*McRae*, 448 U.S. 297 (1980).  This right is violated when the state distinguishes

between individuals on "unreasonable, arbitrary, or capricious differences that are

irrelevant to a legitimate government objective."  *Lehr v. Robertson*, 463 U.S. 248

(1983).  However, this Circuit does not recognize claims of employment

discrimination or retaliation grounded in the Equal Protection Clause of the

Fourteenth Amendment.  *See Brown v. The Research Foundation of SUNY*, 2009

U.S. Dist. LEXIS 45971 (NDNY 2009); *aff'd* 381 Fed. Appx. 119 (2d. Cir. 2010)

("Because Title VII, the ADA, and the ADEA contain their own structure for private

enforcement, Plaintiff may not bring a §1983 claim premised upon the substantive

rights provided by these statutes.")

   For example, in *Beate v. Litt*, the Second Circuit dismissed a public

employee's Section 1983 claim of retaliation and discrimination premised upon

the Equal Protection Clause of the Fourteen Amendment.  79 F.3d 318 (2d. Cir. 1995).  The Court held that "although claims of retaliation are commonly brought under the First Amendment...and may also be brought under Title VII...we know of no court that has recognized a claim under the *equal protection clause* for retaliation following complaints of racial discrimination...[g]iven the availability of Title VII...we see no reason to break constitutional ground in this case."  *Id*. at 322.  *See also DeVito v. Valley Stream Central High School District*, 2011 U.S. Dist. LEXIS 8741 (EDNY 2011) (plaintiff's Section 1983 retaliation claim grounded in the Equal Protection Clause of the Fourteenth Amendment dismissed since "retaliation claims based upon the equal protection clause are not cognizable in this Circuit"); *Worthington v. County of Suffolk*, 2007 U.S. Dist. LEXIS 52793 (EDNY 2007) (retaliating for complaining of gender discrimination is not an equal protection violation); *Lange v. Town of Monroe*, 213 F. Supp. 2d 411, 219 (SDNY 2002) (alleged retaliation in response to plaintiff's sexual harassment complaints is not cognizable as an equal protection claim).  Similarly here, Plaintiff's allegations related to disability discrimination and retaliation are not cognizable as an Equal Protection claim.  Thus, these allegations cannot be used to support a Section 1983 claim against Defendants in the instant suit

Plaintiff also alleges that individual Defendants deprived him of his rights under the First Amendment.  In order to prevail on a claim of First Amendment retaliation in violation of Section 1983, a public employee must establish: (1) that

they engaged in a constitutionally protected activity; (2) that they suffered an adverse employment action; and (3) that the protected activity was a "motivating factor" in the adverse employment action.  *Skehan v. Village of Manaroneck*, 465 F.3d 96, 106 (2d Cir. 2006).  To the extent that Plaintiff is attempting to set forth a First Amendment claim based upon his complaints regarding disability discrimination, such claims are dismissed for the reasons set forth above.  To the extent that Plaintiff is attempting to set forth a First Amendment claim based upon his complaints regarding safety violations, the Court finds that these complaints were related to Plaintiff's job duties rather than a matter of public concern.  Thus, Plaintiff's speech is not constitutionally protected speech sufficient to state a claim under Section 1983.

In determining whether the speech at issue is constitutionally protected, a court is to consider: (1) whether the subject of the employee's speech was a matter of public concern; and (2) whether the employee spoke "as a citizen" rather than solely as an employee.  *Gercetti v. Ceballos*, 547 U.S. 410, 420-22, 424 (1951) 420-22, 424.  In order to constitute speech on a matter of public concern, an employee's expression must be relating to any matter of "political, social or other concern to the community", rather than concerns or complaints related to the speaker's own personal situation.  *Connick v. Myers*, 461 U.S. 138, 143 (1983).

In *Garcetti*, the Supreme Court explained that:  "[a]ctivities required of the

employee as part of [his] employment duties are not performed as a citizen if they are not the kind of activity engaged in by citizens who do not work for the government." 547 U.S. at 423.  Similarly, the Second Circuit has concluded that an employee speaks "pursuant to" their duties, and therefore without First Amendment protection, when his conduct is "part and parcel of his concerns about his ability to properly execute his duties." *Weintraub v. Bd. Of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010).  Topics that are "indispensable prerequisites" to effective performance of the speaker's "primary employment responsibility" are not entitled to First Amendment protection. *Id*.  Most significantly, public employees speaking pursuant to their "official duties" are not afforded First Amendment protection and "this is the case even when the subject of an employee's speech is a matter of public concern." *Ross v. Breslin*, 693 F.3d 300, 305 (2d. Cir. 2012).

In *Looney v. Black*, the Second Circuit reversed a district court's denial of a defendant's motion to dismiss a First Amendment retaliation claim under Section 1983, since the plaintiff had not adequately alleged that he spoke as a private citizen. 702 F.3d at 712.  The plaintiff, who was employed by defendants as a building official, suffered a reduction in his employment status after he communicated with a town resident regarding "wood burning boiler/stove and smoke discharge as public health concerns." *Id*.  The Second Circuit concluded that based upon the allegations in plaintiff's complaint, the alleged speech was

35

"closely related to his work as [b]uilding [o]fficial" and the "only sensible way to interpret [plaintiff's] allegations is that he spoke on these issues because he was in an official position that required, or at least allowed, him to do so." *Id.* The Second Circuit concluded that the district court erred in holding that the defendants were not entitled to qualified immunity with respect to the First Amendment claim, since plaintiff's statements "owed their existence to his position as the [b]uilding [o]fficial." *Id. See also Massaro v. New York City Department of Education*, 481 Fed. Appx. 653 (2d Cir. 2012) (upholding the district court's finding that teacher's statements regarding unsanitary conditions in her classroom were made pursuant to her duties as a public school teacher, because they were aimed at her health and ensuring a safe and clean working environment).

The amended complaint alleges numerous instances where Plaintiff complained to his supervisors and other individual Defendants regarding safety issues in his workplace. It is clear that these complaints were directly related to Plaintiff's position at Jamestown BPU and were "part and parcel" of his official duties. Plaintiff alleges that it was his job to "know and enforce safety regulations", that Defendants instructed him to enforce safety rules, and that he was obligated to report safety violations to OSHA. Plaintiff initiated a number of meetings with his supervisors regarding safety, authored emails regarding various job-related safety concerns, and conducted site visits to monitor safety as

36

part of his job duties.  The totality of Plaintiff's allegations indicate that he was speaking solely as an employee voicing concerns regarding working conditions rather than a private citizen.

Moreover, it is clear from the allegations of the amended complaint that a significant portion of Plaintiff's job function was to handle safety related issues at the utility.  Indeed, it appears that Plaintiff was an engineer who worked in or closely with the electrical division and his complaints were exclusively dedicated to the safety procedures and precautions followed by that division.  Plaintiff was involved in numerous meetings to address safety issues pertinent to the electrical division staff and it was Plaintiff's job to meet with the outside consultant regarding the general safety audit and safety training.  Evaluating these allegations in a light most favorable to Plaintff, it is evident that Plaintiff was speaking pursuant to his official duties when he complained regarding workplace safety.  Thus, his speech is not afforded constitutional protection and cannot serve as the basis for a First Amendment retaliation claim.

Lastly, Plaintiff claims violation of his constitutional due process rights. Procedural due process requirements are generally satisfied by appropriate notice and an opportunity to be heard.  *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d. Cir. 1999).  In order to state a due process violation claim, an employee must first show the depravation of a constitutionally protected liberty or property interest.  *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-

37

62 (2d. Cir. 1993).  Where a plaintiff is a public employee who is terminable only for cause, there exists a constitutionally protected property right to continued employment.  *See Locurto v. Safir*, 264 F.3d 154, 171 (2d. Cir. 2001).  The Second Circuit has noted that "due process dictates that certain public employees who are to be terminated receive, at a minimum, notice of charges and an extremely limited hearing prior to the termination." *Longo v. Suffolk County Police Dept.*, 429 F. Supp. 2d 553 (EDNY 2006); *accord Locurto*, 264 F.3d at 173.  Following termination, the employee is entitled to a full adversarial hearing before a neutral arbitrator.  *Id*.

Significantly, "courts in this circuit, as well as the Second Circuit Court of Appeals, have held, clearly and repeatedly, that the combination of Section 75 and [Article] 78 [proceedings] provide a terminated public employee with remedies that are consistent with the requirements of the due process clause of the Constitution."  *Id*.; *Helenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877, 881-82 (2d. Cir. 1996) (Article 78 satisfies due process); *Chaffer v. Bd. Of Educ. Of the City School Dist. of the City of Long Beach*, 229 F. Supp. 2d 185, 189 (EDNY 2002) (noting adequacy of Article 78 and Section 75).

Also importantly, in assessing a due process claim, it is irrelevant as to whether a plaintiff actually takes advantage of the process provided under New York law.  As long as the process is made available, a federal due process claim

cannot be asserted. *Hellenic American Neighborhood Action Committee*, 101 F.3d at 881. *See also Santiago v. Newburgh Enlarged City School Dist.*, 434 F. Supp.2d 193, 198 (SDNY 2006) (because the New York State Civil Service Law "gave plaintiff post-termination due process (i.e., the right to demand to return to work, and to contest any determination she was not fit to return), the Fourteenth Amendment [due process requirement] is fully satisfied"); *Vargas v. City of New York*, 377 F.3d 200 (2d. Cir. 2004) (officer's constitutional due process claim dismissed because Article 78 "provides a meaningful remedy where violations of due process by a local government entity are alleged").

Again evaluating the allegations of the amended complaint in a light most favorable to Plaintiff, Plaintiff has failed to adequately plead a claim for deprivation of his constitutional due process rights. The amended complaint indicates that Plaintff was served with disciplinary charges and a notice of hearing in accordance with Section 75 of the New York State Civil Service Law. While Plaintiff alleges that he has repeatedly requested an adjournment of the hearing due to his disability, the amended complaint does not allege that Plaintiff was ever denied the right to a hearing on the charges. Moreover, as indicated above, an employee's failure to take advantage of the process offered does not support a federal claim for deprivation of due process. Finally, the amended complaint fails to allege that Plaintiff was denied process pursuant to Article 78 of the New York Civil Procedure Law and Rules.

Plaintiff alleges that Defendants "deprived him of his property by refusing to rescind [Plaintiff's] suspension without pay".  Section 75 provides that "[p]ending the hearing and determination of charges of incompetency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period not exceeding thirty days."  *Nabors v. Town of Somers*, 72 A.D.3d 769 (2d. Dept. 2010).  Section 75 further guarantees that as long as the delay in disposing the charges is not "occasioned by the employee's fault, an employee suspended for a period in excess of thirty days may recover back pay for the excess period even if he or she is eventually found guilty of the charges."  *Id*.; *Gerber v. New York State Housing Authority*, 42 N.Y.2d 162, 165 (1977).

The amended complaint alleges that Defendants are proceeding under the dictates of Section 75.  Section 75 specifically provides Plaintff with a means to recover any loss in pay resulting from a delay in the hearing not caused by Plaintiff.  His temporary suspension without pay, while awaiting final adjudication of the charges, is addressed by New York law and does not constitute a cognizable property interest sufficient to allege a federal due process claim.  Since Plaintiff's amended complaint establishes that he was provided process pursuant to Section 75 of the New York State Civil Service, he cannot assert a federal claim for denial of due process.

For the reasons stated above, Plaintiff has failed to adequately plead the

depravation of a constitutional right necessary to establish a claim under Section 1983.  Defendants' motion to dismiss Plaintiff's Section 1983 claims is granted as to all Defendants.

   7.   <u>Section 740 of the New York State Labor Law</u>

   Plaintiff alleges that Jamestown BPU engaged in a retaliatory personnel action in violation of Section 740 of the New York State Labor Law.  Specifically, Plaintiff alleges that he was retaliated against because he reported safety violations.

   Section 740 of the New York State Labor Law, also known as the "Whistleblower Statute", prohibits an employer from taking "any retaliatory personnel action against an employee" for, *inter alia*, "disclosing to a supervisor or public body an illegal activity that constitutes a danger to the public health or safety, testifying to an investigating public body, or objecting to an illegal policy or practice."  N.Y. Lab. Law §740(2).  However, Section 740 of the New York State Labor Law does not apply to public employers.  *Dibiase v. Barber*, 2008 WL 4455601, *5 (EDNY 2008); *Tamayo v. City of New York*, 2004 WL 137198, *7 (SDNY 2004) (dismissing retaliation claim brought by city police detectives under Labor Law Section 740); *Markovic v. New York City Sch. Constr. Auth*., 2002 U.S. Dist. LEXIS 241, at *12 (SDNY 2002) (Section 740 does not apply to public employers); *Balduzzi v. City of Syracuse*, 1997 U.S. Dist. LEXIS 1317, at *11 (NDNY 1997) ("Labor Law §740 pertains only to employees in the private sector

41

and...its public employee counterpart is New York Civil Service Law §75-b.")

It is undisputed that Plaintiff, an employee of Jamestown BPU, is a public employee.  Section 740 of the New York Labor Law does not apply to public employees such as Plaintiff.  Thus, this cause of action will be dismissed.

### 8.    New York State Executive Law

Plaintiff also asserts claims for disability discrimination and retaliation in violation of Section 296 of the New York State Executive Law.[9]  Section 297 of the Executive Law, commonly known as the "election of remedies" provision, requires a plaintiff to pursue his claim for relief under Section 296 in either a judicial forum or a "local commission on human rights", but not both.  *See* N.Y. Executive Law §297(9); *DeWald v. Amsterdam Housing Authority*, 823 F. Supp. 94 (NDNY 1993).  The only exception to this rule occurs when the local commission on human rights has dismissed the claim "for administrative convenience."  *Id*.  Thus, a "federal court may not adjudicate a claim of unlawful discriminatory practice under [S]ection 296 which has already been filed with the state unless the DHR dismissed the claim for administrative convenience."  *Id*.; *Promisel v. First Am. Artificial Flowers, Inc*., 943 F.2d 251, 256-57 (2d Cir. 1991) (federal courts exercising ancillary jurisdiction over a Section 296 claim must strictly adhere to the "election of remedies" scheme).  Indeed, when a plaintiff

---

[9]Plaintiff refers to this cause of action as arising under the New York State Human Rights Law.  Article 15 of the New York State Executive Law, in which Section 296 appears, is also known as the Human Rights Law.

elects to pursue claims of discrimination through administrative proceedings before the Division of Human Rights, Section 297(9) poses an "insuperable jurisdictional bar" to subsequently raising those claims of discrimination in Court." *Smith-Henze v. Erwin Gould Services for Children and Families*, 2006 U.S. Dist. LEXIS 93076 (SDNY 2006); *quoting Moodie v. Fed. Reserve Bank*, 58 F.3d 879, 882-83 (2d. Cir. 1995)

Plaintiff alleges that he filed a charge of discrimination with the New York State DHR on March 17, 2011.  There are no allegations that the DHR dismissed this complaint for administrative convenience.  Instead, Plaintiff alleges that he "withdrew his Complaint to pursue federal claims that cannot be adjudicated by the DHR."  However, withdrawal prior to an agency determination, absent a showing that there was a dismissal for administrative convenience, does not obviate the effect of election of remedies.  *Sprott v. Avon Products, Inc.*, 596 F. Supp. 178, 184 (SDNY 1984); *Cameron v. American Bazzar, Inc.*, 1986 U.S. Dist. LEXIS 27047 (SDNY 1986) ("even the withdrawal of the complaint from the NYSDHR does not lift the effect of the election of administrative agency proceedings over federal court remedies").

Plaintiff chose to pursue his state discrimination and retaliation claims before the DHR.  Without a dismissal for administrative convenience by the Division, Plaintiff is barred from asserting an Executive Law claim before this Court.  Therefore, this cause of action is dismissed without prejudice to Plaintiff's

43

ability to reassert the claim along with sufficient proof that he received a dismissal for administrative convenience from the appropriate state agency.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion to dismiss Plaintiff's ADA claims for failure to exhaust administrative remedies is denied, without prejudice to Defendants' ability to raise this affirmative defense going forward.  Defendants' motion to dismiss is also denied with respect to Plaintiff's discrimination and retaliation claims pursuant to Title I of the ADA against Defendant Jamestown BPU.

Defendants' motion to dismiss is granted, with prejudice and in its entirety, with respect to Plaintiff's claims pursuant to Title II of the ADA, Section 1983, and Section 740 of the New York State Labor Law.

Defendants' motion to dismiss Plaintiff's New York State Executive Law claim is dismissed without prejudice to Plaintff's ability to reassert the claim upon a showing that he received a dismissal for administrative convenience from the New York State Division of Human Rights.

The Clerk of the Court is instructed to take all necessary steps to close the case with respect to individuals defendants David Leathers, David Watkins, Chris Rogers, Arline Hazenberg, William Wright, Jr., Randy Peterson and Ward Near

only.

The case will be referred to a Magistrate Judge for further proceedings.


SO ORDERED.


_s/ Richard J. Arcara_

HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 29, 2013